IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

ANDREA JOHNSON                                                                  PLAINTIFF

VS.                           CASE NO. 09-4012

TEXARKANA ARKANSAS SCHOOL
DISTRICT NO. 1; IN THEIR OFFICIAL
CAPACITY AS MEMBER OF THE BOARD
OF DIRECTORS OF THE TEXERKANA
SCHOOL DISTRICT NO. 1; JIMMY HICKEY, JR.,
PRESIDENT, CAROL DALBY, SECRETARY,
SHELBY BROWN, JESSE BUSHANANI, DONALD
NELSON and ADGER SMITH; AND RUSSELL
SAPAUGH, IN HIS INDIVIDUAL CAPACITY AS
SUPERINTENDENT OF THE TEXARKANS SCHOOL          DEFENDANTS

**AMENDED COMPLAINT**

I. **JURISDICTION & VENUE**

1.      Jurisdiction in this court is appropriate pursuant to 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1343 (civil rights) as Plaintiff alleges imminent deprivation of constitutional rights guaranteed by AMENDS. IV, V, and XIV, U.S. CONST. Venue in this court is appropriate pursuant to the general venue statute, 28 U.S.C. § 1391, as defendant resides in the Texarkana Division of the Western District of the State of Arkansas. This is also an action pursuant to Arkansas Code Annotated § 6-17-1501 et. seq.

1


EXHIBIT A

## II. PARTIES

2. Plaintiff, Andrea Johnson, is a resident of Texarkana, Texas. She is a person of African-American descent. She was employed by the Texarkana Arkansas School District as a teacher pursuant to a written contract for the 2008-2009 school year. She was discharged in April, 2009 by the defendant school district. She contends that her treatment leading up to discharge by defendants was due to her race or color.

3. Defendant Texarkana Arkansas School District No. 1, Miller County, Arkansas, (hereafter "the District" or, "TASD No. 1") is a duly organized and existing political subdivision of the State of Arkansas capable of suing and being sued. *A.C.A.* § 6-13-102. Defendants Jimmy Hickey, Jr., President, Anthony Ware, Vice President, Carol Dalby, Secretary, Shelby Brown, Jesse Buchanani,. Donald Nelson and Adger Smith are members of the board of directors of the TASD, and are sued in their official capacity. Defendant Russell Sapaugh is employed as the superintendent of TASD, and is sued in his individual capacity.

## III. FACTUAL ALLEGATIONS

4. Plaintiff is a teacher licensed by the Arkansas Department of Education as a special education instructor specialist for grades P-4 and 5-12. She is also licensed in Texas to teach U.S. History, Social Studies, and Special Education.

5. Plaintiff has been a teacher for more than twenty-four years. She worked for approximately 20 years in Texas prior to defendant employing her as a teacher in the 2005-2006 school year. Defendant re-employed plaintiff by written contract each school

year since 2005-06, most recently for the 2008-2009 school year. **[Exhibit 1]** Her specific job assignment was referred to as an "inclusion teacher." In that role, she assisted the regular classroom teacher with the special needs students who were included in the regular classroom despite different learning needs and abilities. Plaintiff was not the only teacher in the classroom nor the primary teacher for any of these students. The regular teacher was the primary teacher who established course requirements, prepared tests for all students, and graded all students, including those with special needs.

6. Plaintiff was a non-probationary teacher pursuant to provisions of the Arkansas Teacher Fair Dismissal Act, *A.C.A.* § 6-17-1502, having completed three years employment in a single Arkansas school district.

7. Accordingly, Plaintiff had a constitutionally protected entitlement of a property interest in continued employment with the defendant.

8. Plaintiff had an excellent, long-standing, professional reputation as an educator. Prior to the events described below, she never had her professional integrity impugned by a student, teacher, parent, school district superintendent, colleague, or school board. Nor did plaintiff face censure, revocation, or suspension of her teaching licenses in either Texas or Arkansas during her 25 year career as an educator.

9. Accordingly, plaintiff has an entitlement to constitutionally protected liberty interests in her good name, honor, integrity, and professional associations and reputation as a licensed educator and ability to pursue her chosen career.

10. On December 19, 2008, Superintendent Sapaugh issued a suspension letter

to plaintiff accusing her of unprofessional conduct. The letter impugned plaintiff's good name, honesty and integrity as a professional educator. The letter was based on statements elicited from three students on December 18 and 19, 2008. **[Exhibit 2]**[1] Sapaugh based his recommendation on a limited investigation by Principal Robin Stover and Assistant Superintendent Kathy Kessler. The report of their investigation was not fully and fairly presented to plaintiff.

---

[1] In light of the relief plaintiff seeks, and the potential greater harm to plaintiff that could arise, counsel for plaintiff has filed offending exhibits under seal and has been careful not to repeat nor reproduce in pleadings or exhibits the precise allegation of wrong doing at issue. A *Motion for Protective Order* and *Motion to Seal* any portion of the record which repeats or publishes the substance of the allegation will be forthcoming. Pending entry of a protective order and order to seal documents which repeat the allegation, plaintiff urges defendant to file any such documents under seal as well.

11. Kessler interrogated seven special education students on January 5, 2009, while plaintiff was on suspension. In neither the December 18-19 nor the January 5, interrogations of students did the investigating district administrators contact the student's parents or guardians, nor did they inform the students or their parents that the students statements would be relied upon to terminate the employment of a teacher. No effort was made to interrogate these special needs students in a manner which took into consideration their specific individualized education plans (IEP's).

12. On information and belief, these students were prompted to implicate plaintiff when questioned.

13. Superintendent Sapaugh and Assistant Superintendent Kathy Kessler met

4

with plaintiff on January 12, 2008, to question her and to allow her to present her side of the story. Although they repeated the students' allegations, no actual written statements from the students were made available at this meeting because none had been gathered.

14. Johnson denied the allegations and answered Sapaugh and Kessler's questions. Johnson absolutely denies she engaged in the alleged unprofessional conduct.

15. Superintendent Sapaugh stated at the conclusion of this meeting that he was reluctant to interview the students, but may do so before making a decision.

16. Plaintiff's counsel faxed a letter to Superintendent Sapaugh on January 13, 2009, pleading that, should further interviews be conducted, the student's parents should be contacted and invited to be present and possibly assist, that he allow Johnson and her counsel to confront the accusers, participate by asking questions, and urging that the student's statements so taken be recorded and preserved so the students would not be required to testify again at any school hearing that may be necessary if the superintendent ultimately recommended termination of Johnson's employment. **[Exhibit 3]**

13. Despite Johnson's willingness to allow defendant to submit the student's testimony by deposition, the least intrusive manner possible by which fundamental constitutional due process could be attained, Sapaugh simply went headlong on his own, ordering that statements be taken from the students in secret on January 14, 2009, just one day after receiving the request to participate from Johnson's counsel. On information and belief, the students were not allowed to contact a parent, the administration did not contact their parents, their statements were not recorded and preserved, and no efforts

were taken to determine the reliability of the students statements when examined under these circumstances, taking into consideration their known individual cognitive limitations and learning disabilities.

14. On January 19, 2009, Sapaugh issued a letter required by A.C.A. § 6-17-1507, notifying Johnson that he intended to recommend termination other contract.

15. Plaintiff made a timely request for a hearing before the school board as provided by Board policy and state law.

16. The defendants proceeded to hold a hearing as provided by the Fair Teacher Dismissal Act. In that respect, the defendants did not allow plaintiff access to witnesses and other information necessary in order to present her case before the school board. The defendants otherwise failed to comply with the provisions of the AFTDA.

17. The defendants' failures as stated above violated school board policy, the AFTDA and the due process and equal protection clauses of the 14th Amendment.

18. On or about April 7, 2009, the defendant school district terminated the plaintiff. The plaintiff asserts that her termination was due to her race or color in violation of the 14th Amendment and 42 U.S.C. § 1983.

19. The defendants were aware that other teachers were associated with the event which precipitated defendants' investigation into plaintiff's conduct. Those persons were white employees of the district. The district did not conduct an investigation regarding their conduct or involvement with respect to the allegations lodged against the plaintiff. By the defendants' failure to conduct a full and fair investigation with respect to the allegations involving the plaintiffs and by leaving the white employees uninvolved

therein, the defendants treated plaintiff in a disparate manner. By not taking those white employees to a hearing regarding the same or similar allegations, the white employees were favored.

### IV. RELIEF REQUESTED

20. Plaintiff has been deprived of well known and well established rights with respect to being respect to being provided a fair and nondiscriminatory hearing, one which also complies with AFTDA. Plaintiff has been treated differently than similarly situated white employees due to her race or color. Because of such disparate treatment, plaintiff was discharged and is threatened with future loss of employment, licensure, status, reputation and liberty. She has no effective recourse by which to redress the wrongs which defendants have visited upon her except this action for injunctive and equitable relief and for damages.

WHEREFORE, plaintiff respectfully prays that this matter be set for hearing on the damage issue and that after such hearing, the Court itself award plaintiff injunctive and equitable relief as provided by law. The equitable relief includes reinstatement with benefits, back pay, any pay raises and any other relief which would have been awarded her had she not been terminated.

Plaintiff further prays that this matter be set for hearing by jury. She also prays for an award of fees and costs pursuant to 42 U.S.C. § 1988.

Respectfully submitted

/s/ John W. Walker – 64046
JOHN W. WALKER, P.A.
1723 Broadway
Little Rock, Arkansas 72206
501-374-3758
501-374-4187 (facsimile)

## CERTIFICATE OF SERVICE

I do hereby state that a copy of the foregoing has been served on counsel for the defendants by utilizing the CM/ECF filing on this 19th day of June, 2009.

Ned Stewart - autreystewart@cs.com

/s/ John W. Walker