IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

ANDREA JOHNSON                                                                           PLAINTIFF

vs.                                        Civil No. 4:09-cv-04012

TEXARKANA ARKANSAS
SCHOOL DISTRICT NO. 1 et al.                                                     DEFENDANTS

**REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Before this Court is Defendants' Motion and Notice of Motion for Summary Judgment. ECF No. 43. Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and (3) (2005), the Honorable Harry F. Barnes referred this Motion to this Court for the purpose of making a report and recommendation. ECF No. 53. In accordance with that referral, this Court enters the following report and recommendation and recommends this Motion be **DENIED** as to Plaintiff's race discrimination and retaliation claims and **GRANTED** as to Plaintiff's procedural due process claim.

**1. Background[1]**

Plaintiff originally filed this action on February 27, 2009. ECF No. 4. Along with her original complaint, Plaintiff also filed a Motion for Protective Order and Motion for a Preliminary Injunction. ECF Nos. 1-2. Judge Barnes granted the Motion for Protective Order. ECF No. 5. Judge Barnes held a hearing on the Motion for Preliminary Injunction on March 13, 2009 and denied

---

[1] The Background section is taken primarily from the information presented at the due process hearing before the school board on April 6, 2009, the depositions of the individuals involved, and the information presented at Judge Barnes's preliminary injunction hearing. ECF Nos. 34, 45, 49. To the extent the parties dispute the information as presented at this hearing or in these depositions, this Court will so note. As is required, this Court will construe the facts in a light most favorable to the nonmovant, Plaintiff. *See Fletcher v. Burlington N. and Santa Fe Ry. Co.,* 474 F.3d 1121, 1125 (8th Cir. 2007).

that Motion in an oral ruling. *Id.*

Thereafter, Plaintiff filed a Second Amended Complaint, and this is the complaint currently before this Court. ECF No. 48. According to this complaint, Plaintiff was employed by the Texarkana Arkansas School District ("School District") as a teacher pursuant to a written contract for the 2008-2009 school year. *Id.* ¶ 2. She alleges she was discharged in April of 2009 by the School District. *Id.* She is a person of African-American descent and alleges her treatment leading up to her discharge was due to her race or color. *Id.*

While employed with the School District from 2008-2009, Plaintiff was employed as an "inclusion teacher" at the high school. ECF No. 48 ¶ 5. In that role, she assisted the regular classroom teacher with the special needs students who were included in the regular classroom despite different learning needs and abilities. *Id.* In her capacity as a special education teacher, Plaintiff taught with Donna Johnson, a Caucasian algebra teacher at the high school whose students included both special education and non-special education students. ECF No. 45-1 at 18-19. Plaintiff's primary responsibility was to oversee the special education students. *Id.*

The relevant dates for this lawsuit begin on December 16, 2008. On the morning of December 16, 2008, Donna Johnson delivered an algebra test to the classroom of another Caucasian algebra teacher at the high school, Joe Hickey. ECF No. 45-1 at 64, 74; ECF No. 45-2 at 101-102, 176-177. This test was prepared by another algebra teacher, Sharon Richardson, who was also Caucasian. ECF No. 45-2 at 164, 176. Donna Johnson left the test in Joe Hickey's chair in his classroom. *Id.* After she delivered the test, she may have locked the door, but this issue is in dispute. *Id.* at 64,74, 128-129, 181-182. Later that morning, Plaintiff noticed the test unsecured on Joe Hickey's chair and placed it in a folder his drawer. *Id.* at 129, 220. That drawer did not have

a lock on it. *Id.* at 221.

On December 18, 2008, the test was administered. ECF No. 45-1 at 19- 47. Plaintiff took eight special education students from Donna Johnson's classroom to other classrooms for small group testing. *Id.* at 20-24. Plaintiff took seven of those students (which included Students B and C) to Joe Hickey's classroom for testing and one of those students (Student A) to Sharon Richardson's classroom for testing.[2] *Id.* Plaintiff remained in Joe Hickey's classroom with the seven students while Sharon Richardson remained in her classroom with Student A. *Id.* At one point, Plaintiff left Joe Hickey's room to check on Student A. *Id.* at 24-25. While Plaintiff was in Sharon Richardson's classroom checking on Student A, it appears Student A either requested some scratch paper or Plaintiff suggested Student A needed scratch paper. *Id.* at 24-25, 192, 225. In either case, Plaintiff gave Student A some scratch paper. *Id.* Sharon Richardson did not see what, if anything, was provided along with the scratch paper. *Id.* at 24-25, 169-170, 192-193. Sharon Richardson also stated that she did not see whether the scratch paper contained writing on it. *Id.* at 193.

Student A completed the algebra test. ECF No. 45-1 at 25-26. After she completed the test, she handed all of her papers to Sharon Richardson. *Id.* Sharon Richardson then delivered the documents to Donna Johnson. *Id.* There is no indication Sharon Richardson looked at these papers before she turned them in to Donna Johnson. *Id.* at 25-26, 106. When she received them, Donna Johnson sifted through the papers and states she found what appeared to be a handwritten answer

---

[2] There appears to be some confusion in the record as to the number of students Plaintiff took with her to be tested. At the hearing before Judge Barnes in this matter, Plaintiff testified that she took six students in the classroom with her when the test was being administered. ECF No. 34 at 20. Because it does not really impact this case, for the sake of argument, this Court presumes there were seven children she presided over in Joe Hickey's classroom.

sheet attached to Student A's test. *Id.* at 26-27. This answer sheet contained the answers to several of the test questions but also contained several blank spaces. *Id.* Further, four of the answers were incorrect. *Id.* at 27-28.

Upon discovering this answer sheet, Donna Johnson reportedly went to Sharon Richardson's classroom and asked if she had given the sheet to Student A. ECF No. 45-1 at 30. Sharon Richardson stated that she had not but that Plaintiff had given something to Student A while Student A was taking the test. *Id.* at 30-31. Donna Johnson then went to Robin Stover, the principal of the high school to notify her there may have been a "breach in security of the test." *Id.* After this report, Robin Stover called Becky Kesler, the assistant superintendent of elementary education. *Id.* at 14, 31-32. After hearing the allegations, Becky Kesler concluded Plaintiff should be interviewed. *Id.* at 17.

Robin Stover interviewed Plaintiff the next day on December 19, 2008. ECF No. 45-1 at 32, 109-112. Plaintiff, Robin Stover, and Mary Register were present at this meeting. *Id.* Robin Stover directly asked Plaintiff if she had given Student A an answer sheet, and Plaintiff denied doing so. *Id.* Robin Stover then showed her the answer sheet and asked if it was her handwriting. *Id.* In response, Plaintiff stated that the handwriting looked like her handwriting.[3] *Id.* at 109-112, 149-150, 228. It does not appear Plaintiff had the opportunity to hold or examine the contents of that answer sheet. *Id.* at 228. At that point, Plaintiff suggested the meeting be ended, and the meeting was concluded. *Id.* at 32-33, 112. Robin Stover asked Plaintiff to leave the school for the day so an investigation could be completed, and she left. *Id.* On that date, Plaintiff was suspended with pay,

---

[3] There has been some dispute as to whether Plaintiff actually made that statement. ECF No. 34 at 10. Plaintiff, however, stated at the hearing on April 6, 2009 that she did, indeed, state the handwriting looked like her handwriting. ECF No. 45-3 at 228-232.

and the School District stated a suspension was necessary so that an investigation could be conducted.  *Id.* at 33-34, 112-114; ECF No. 45-9.

On the same date, December 19, 2008, Robin Stover interviewed Students B and C about the test.  ECF No. 45-1 at 36.  Allegedly, both Students B and C stated that Plaintiff had given them a piece of paper that contained the test answers to the algebra test, but the remaining five students denied that they had been given any answers.  *Id.* at 36-37.  After school resumed in January, Robin Stover was also able to interview Student A about the test.  *Id.* at 37-38.  Student A also allegedly stated Plaintiff had given her a copy of the handwritten answer sheet.  *Id.*  Students A, B, and C were also subsequently interviewed by Becky Kelser.  *Id.* at 44-47.  According to Ms. Kesler's testimony, those students again verified Plaintiff had given them the test answers.  *Id.*

Neither Plaintiff nor her attorney were present when these students were interviewed.  ECF No. 45-3 at 241-244.  Apart from some notes from these meetings, there does not appear any documentation as to these students' answers.  ECF No. 49-7.  Plaintiff, however, in response to Defendant's Motion for Summary Judgment has submitted affidavits from three students.[4]  In these affidavits, all three of these students stated Plaintiff did not give them an answer sheet for the test.[5]  ECF No. 49-4.

On January 15, 2009, Russell Sapaugh, the superintendent of the school district, sent a letter to Plaintiff recommending her termination.  ECF No. 45-12.  Mr. Sapaugh stated termination was

---

[4] Plaintiff represented these affidavits are from the three minors in question, and Defendants have not disputed this representation.  Because of the sensitive nature of their names, none of their full names are stated.  ECF No. 49-4.  Instead, just their initials are given.  *Id.*  For the purpose of this Report and Recommendation the Court assumes the three affidavits presented by Plaintiff are from Students A, B, and C.

[5] It appears Plaintiff had four affidavits.  ECF No. 45-3 at 247-248.  There were, however, only three affidavits filed with this Court.  ECF No. 49-4.  Further, since only Students A-C were involved, it is unclear why there would be four affidavits.

recommended for the following reason:

> 1. Inappropriate conduct with complete disregard for professional standards in teaching by providing students with answers to a semester test.

*Id.* This letter also notified Plaintiff that she had the opportunity to have a hearing before the school board. *Id.* Thereafter, Plaintiff requested this hearing, and a hearing before the school board was held on April 6, 2009. ECF Nos. 45-1, 45-2, 48 ¶ 19, and 45-3. After the hearing, the school board voted to adopt the recommendation of termination, and Plaintiff was terminated. ECF No. 45-3 at 271-273. The vote was four to three to terminate Plaintiff. *Id.* Plaintiff now appeals that termination.

**2. Applicable Law**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, a federal court is authorized to grant summary judgment in a case. Summary judgment is appropriate when the record, viewed in the light most favorable to the nonmoving party, reveals that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c)(2). A genuine issue of material fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

The moving party bears the initial burden of showing that no genuine issue of material fact exists. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986). The burden then shifts to the nonmoving party to show through specific evidence that a triable issue of fact remains on an issue where the nonmovant bears the burden of proof at trial. *Id.* at 324. A mere scintilla of evidence in support of the non-movant's position is insufficient. *Anderson,* 477 U.S. at 252. To survive a motion for

summary judgment, "a nonmovant must present more than a scintilla of evidence and must advance specific facts to create a genuine issue of material fact for trial." *Parks v. City of Horseshoe Bend, Arkansas,* 480 F.3d 837, 839 (8th Cir. 2007) (citation omitted). As stated in this rule, "[w]hen a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must–by affidavits or as otherwise provided in this rule–set out specific facts showing a genuine issue for trial." *Id.*

### 3. Discussion

In her Second Amended Complaint, Plaintiff raises two different causes of action: (A) race discrimination and (B) retaliation. ECF No. 48. This Court will address both of these arguments separately. In considering these claims, this Court will address all the evidence submitted by the Parties and, as noted above, will construe all factual disputes in a light most favorable to Plaintiff. *See Fletcher,* 474 F.3d at 1125.

Prior to addressing these two claims, however, it is important to first consider Plaintiff's claim that her procedural due process rights were violated. In her original complaint in this action, it appears Plaintiff raised a third cause of action–procedural due process–whereby she sought to enjoin the school board from considering oral statements allegedly made by her students in the district. ECF No. 4. Plaintiff claimed those oral statements were not admissible because she had not been afforded the opportunity to confront those students and cross-examine them prior to being terminated. *Id.*

Judge Barnes addressed this issue at the preliminary injunction hearing but rejected it. ECF No. 10. Relying upon *Flath v. Garrison Public School District No. 51,* 82 F.3d 244, 247 (8th Cir. 1996), Judge Barnes held that a pre-termination due process hearing need not include the right to

confront or cross-examine an adverse witness. It does not appear Plaintiff has raised this claim in her Second Amended Complaint apart from stating that her due process rights were violated, and Plaintiff did not argue this issue at the summary judgment hearing in this matter. ECF Nos. 48, 60. Thus, this issue will not be addressed further, but to the extent Plaintiff still asserts this claim, this Court recommends that summary judgment be **GRANTED** as to this claim in accordance with *Flath*.

### A.   Race Discrimination

As an initial matter, Defendants challenge whether Plaintiff has properly raised the claims of race discrimination and retaliation. ECF No. 45 at 10-11. Defendants argue that race discrimination was raised for the first time at the due process hearing and had not been raised prior to that time. ECF No. 45-1 at 72; ECF No. 45-3 at 264. Despite that fact, Plaintiff's Second Amended Complaint includes both a race discrimination claim and retaliation claim. ECF No. 48. Judge Barnes specifically permitted Plaintiff to file this Second Amended Complaint. ECF No. 47. Thus, this Court finds both of these claims are properly before this Court.

Additionally, it is important to consider that for both the race discrimination claim and retaliation claim, the *McDonnell Douglas* burden-shifting analysis applies. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973). Under this framework, the plaintiff has the initial burden of establishing his or her *prima facie* case. *See id.* at 802. Once the plaintiff makes that showing, the burden shifts to the employer to produce some legitimate, non-discriminatory reason for the adverse employment action. *See id.* at 802-03. If the employer satisfies this burden, the plaintiff must prove the proffered reason is a pretext for racial discrimination or retaliation. *See id.* at 804-05.

### 1.   The *Prima Facie* Case

To establish a *prima facie* case for race discrimination, a plaintiff must establish he or she

(1) is a member of a protected class; (2) was qualified for his or her position; and (3) suffered an adverse employment action under circumstances permitting an inference that the action was a result of unlawful discrimination. *See Habib v. Nations Bank,* 279 F.3d 563, 566 (8th Cir. 2001). *See also Person v. J.S. Alberici Constr. Co., Inc.,* 640 F.2d 916, 918 (8th Cir. 1981) (applying the Title VII standards to a race discrimination case under 42 U.S.C. § 1981). To create an inference of discrimination and meet the requirements of the third element, a plaintiff can present evidence of disparate treatment between, for example, Caucasian and African-American individuals. *See EEOC v. Kohler Co. d/b/a Sterling Plumb. Group, Inc.,* 335 F.3d 766, 775-76 (8th Cir. 2003). The standard for establishing disparate treatment is "rigorous" and requires evidence that the individuals were similarly situated in all relevant respects and have "engaged in the same conduct without any mitigating or distinguishing circumstances." *Id.*

A plaintiff can also create an inference of discrimination by providing evidence of statements or other conduct of the defendant indicating discrimination. *See Lewis v. Heartland Inns of America, L.L.C.,* 591 F.3d 1033, 1037 (8th Cir. 2010). Indeed, under certain circumstances, the Eighth Circuit has allowed evidence of pretext to satisfy the plaintiff's burden for creating an inference of discrimination. *See Putman v. Unity Health System,* 348 F.3d 732, 736 (8th Cir. 2003). The *Lewis* Court further outlined this reasoning:

> Evidence that Heartland's [defendant's] reason for the termination were pretextual include the fact that Lewis [plaintiff] had a history of good performance at Heartland. She had no prior disciplinary record and had received two merit based pay raises. The two individuals who supervised her during the majority of her employment at Heartland both stated that they had no problem with her appearance, and at least one customer had never seen customer service like that Lewis had provided. *On this record, a factfinder could infer a discriminatory motive in Heartland's actions to remove Lewis.*

591 F.3d at 1041 (emphasis added). When the employee establishes a *prima facie* case, the employer must offer a legitimate reason for the adverse employment action. *See Habib,* 279 F.3d at 566. Once that legitimate reason is offered, the employee may still avoid summary judgment by demonstrating a genuine factual dispute about whether the employer's legitimate nondiscriminatory reason for termination was pretextual. *See Lewis,* 591 F.3d at 1041.

In the present action, there is no dispute Plaintiff has met the first two requirements of her *prima facie* case. First, Plaintiff has demonstrated that, as an individual of African-American descent, she is a member of a protected class. Second, Defendants do not dispute that Plaintiff was fully qualified for her position. The only issue in dispute is the third element of Plaintiff's *prima facie* case: whether Plaintiff "suffered an adverse employment action under circumstances permitting an inference that the action was a result of unlawful discrimination."

### 2.     Inference of Unlawful Discrimination

In making this showing of unlawful discrimination, as noted above, Plaintiff is not required to provide evidence of comparative discrimination or disparate treatment, but instead, may provide other evidence creating an inference of discrimination. In this case, Plaintiff has provided such evidence which creates a fact issue as to whether a reasonable jury could find an inference of discrimination. Notably, in this case, much like the plaintiff in the *Lewis* case, Plaintiff has provided evidence indicating that she has an excellent work record and reputation. Plaintiff has been a teacher for twenty-seven (27) years and has worked for three different school districts, including the Texarkana Arkansas School District, Texarkana Texas School District, and Liberty-Eylau, Texas School District. ECF No. 34 at 3. At the time she was terminated, she was in her fourth year at Texarkana Arkansas School District. *Id.* During her 27 years of teaching, she had never encountered

an allegation of professional impropriety on her part. *Id.* She had never been suspended or terminated from employment as a teacher. *Id.* at 4.

Plaintiff's initial accuser, Donna Johnson, testified that she had the utmost respect for Plaintiff and that she "always wanted" Plaintiff to work with her in her classroom. ECF No. 45-2 at 187. Based upon this evidence indicating an exemplary work record, "a factfinder could infer a discriminatory motive" in Defendant's "actions to remove Plaintiff." *See Lewis,* 591 F.3d at 1041. Thus, consistent with the *Lewis* holding, Plaintiff has provided sufficient evidence to raise a factual question as to the final element of her *prima facie* case.

Further, even if she were required to provide comparative evidence that she was treated differently than similarly-situated Caucasian employees, Plaintiff has provided such evidence as it relates her suspension on December 19, 2008, which was the initial adverse employment decision. Plaintiff has provided evidence indicating that when she was initially suspended on December 19, 2008, none of the other teachers involved in the incident were suspended so that an investigation could be conducted. Notably, three other Caucasian teachers were in charge of the test, had access to the test, and could have created an answer sheet from the test: Donna Johnson, Joe Hickey, and Sharon Richardson. Despite their access to the test, Plaintiff has provided evidence that none of those teachers were initially investigated or even questioned. ECF No. 45-1 at 56-59, 61-62, 72; ECF No. 45-2 at 130-131.

Instead, the evidence indicates Robin Stover, who suspended Plaintiff, believed Donna Johnson's assessment of Plaintiff's handwriting and her assumption that Plaintiff was responsible for distributing the answer sheet. ECF No. 45-2 at 111. The evidence also indicates that based upon this belief, Robin Stover questioned Plaintiff regarding the answer sheet. *Id.* at 108-109. Plaintiff

has provided evidence that Ms. Stover's questions were accusatory and that Ms. Stover asked Plaintiff *why* she had given a student answers to the test. *Id.* Plaintiff has testified she made no admissions regarding the answer sheet or indicated guilt. *Id.* at 110-112. Instead, Plaintiff has provided evidence that she was questioned about the answer sheet and was not able to personally examine it. *Id.* She has provided evidence that the test was held five feet from her and only then did she state that the handwriting on the answer sheet looked like her handwriting.[6] ECF No. 45-3 at 227-228. Viewed in the light most favorable to the Plaintiff, as the Court must in considering this Motion for Summary Judgment, the Court finds sufficient comparative evidence for a reasonable jury to conclude that Plaintiff was treated differently than similarly-situated Caucasian teachers at the time she was suspended.

Defendants attempt to characterize Plaintiff's suspension on December 19, 2008 as standard policy for the School District in order to facilitate an investigation. ECF No. 45-2 at 113. Even though suit is not usually filed for such a suspension, and this issue does not appear to have been addressed by many circuits, a suspension can still be considered an "adverse employment decision." *See Arendale v. City of Memphis,* 519 F.3d 587, 603 (8th Cir. 2008) (recognizing that suspension constitutes an "adverse employment decision" in a Section 1983 action and though the issue was not in dispute, it could not be "reasonably" contested). *See also Bell v. Runyon,* 242 F.3d 373, at *1 (8th Cir. Nov. 15, 2000) (unpublished) (indicating a suspension would be a recognized adverse employment decision in a race discrimination case). Further, the fact the suspension was without

---

[6] This finding that Plaintiff was unable to examine the answer sheet and had it held five feet from her is based upon Plaintiff's testimony at the due process hearing. Robin Stover did not know if she allowed Plaintiff to look at the document or not, and it unclear how far she was sitting from Plaintiff when she showed Plaintiff this answer sheet. ECF No. 45-2 at 141-142. Either way, this Court will assume Plaintiff's version of the facts on this issue are true. *See Fletcher,* 474 F.3d at 1125.

pay does not appear to matter under the foregoing case law. Accordingly, based upon these findings, this Court holds Plaintiff has provided evidence creating a fact issue on each element of her *prima facie* case.

Since Plaintiff has established genuine issues of material fact for each element of her *prima facie* case, Defendants must now provide a legitimate, nondiscriminatory reason for her termination. In this case, Defendants have provided such a reason. Notably, based upon their internal investigation, Plaintiff was found to have given three students answer sheets to an algebra test. Plaintiff was suspended for this purported reason (ECF No. 45-9 ), and the entire due process hearing on April 6, 2009 was centered around this issue. ECF No. 45-1, 45-2, and 45-3. There is no dispute this proffered reason for her termination is nondiscriminatory.

### 3.   **Evidence of Pretext**

Plaintiff then has the burden of demonstrating the reason proffered for termination was pretextual. In reviewing the evidence of pretext, it is important to first consider the evidence presented at the due process hearing. Additionally, this Court will consider the statements made by a school board member after the April 6, 2009 due process hearing. Upon review of this information (as outlined below), this Court finds the evidence presented at the due process hearing on April 6, 2009, coupled with the statements made by a school board member after the hearing, create a fact issue as to whether the School District's stated reason for termination was pretextual.

Upon review, this Court holds a reasonable jury could find that the evidence presented at the due process hearing did not necessarily support termination. First, the statements obtained from Students A, B, and C were contradictory. Although Robin Stover and Becky Kesler interviewed the students and reported that those students stated Plaintiff had given them answers to the test, these

students also later submitted sworn affidavits signed by both the students and their parents stating that Plaintiff had not given them the answers to the test. ECF No. 49-4. Those affidavits were introduced as an exhibit during the due process hearing and were available to the school board when they made their decision of termination. ECF No. 45-3 at 241-242.

Second, there is also a fact issue because Plaintiff had no motive for providing this answer sheet. As recognized above, Plaintiff had no disciplinary record in 27 years of service as a teacher. ECF No. 34 at 3; ECF No. 45-3 at 218. She did not know these students personally or their parents personally. ECF No. 45-3 at 228-229. This was not an exam whose scores would be reported to the state, and it did not appear that she would receive any benefit if these students scored well on this exam. ECF No. 45-1 at 94. Further, even if she were motivated to have her students succeed on this exam, it is unclear why she would provide an answer sheet with four incorrect answers and several missing answer blanks. If she truly wanted these students to score well on this test, it seems she would have provided all the answers from the answer key for every question or for the majority of the questions. There is no dispute that on the morning of December 16, 2008, she had access to the actual answer key with all the correct answers on it. ECF No. 45-3 at 201.

Third, since this test was unsecured for two days before the exam in Joe Hickey's drawer, there is at least some possibility a student may have gotten the test and created an answer sheet. ECF No. 45-2 at 200. Indeed, even though Plaintiff was apparently the only teacher with access to all three of the students–Students A, B, and C–there is still a distinct possibility a student could have created the answer sheet and not necessarily Plaintiff. For example, the test proctor, Sharon Richardson was unclear whether Student A had taken her backpack in with her to the exam, and there is a possibility she took the answer sheet out of her backpack while taking the exam. ECF No.

45-2 at 194.

In reviewing Plaintiff's submitted evidence of pretext, this Court must also consider the statements by a school board member following the due process hearing. After the hearing on April 9, 2009, it is undisputed one of the school board members, Adger Smith, approached Plaintiff and referenced Plaintiff's attorney's raising the issue of race during the due process hearing. The actual substance of the discussion is in dispute. Defendants claim Mr. Smith told Plaintiff's attorney he "could take his racism and go back to Little Rock." ECF No. 45 ¶ 34. Plaintiff claims Smith stated that she had "lost his vote" when Plaintiff's attorney "played the race card" during the hearing. ECF No. 49-12 ¶ 3.

Viewing these statements in the light most favorable to the Plaintiff, either statement could allow a reasonable jury to find Plaintiff's termination was racially motivated. The school board vote was four to three in favor of termination, and Mr. Smith voted for termination. ECF No. 45-3 at 271-272. Thus, Mr. Smith's vote was the deciding vote. Such remarks regarding race create a fact issue that could allow a reasonable jury to find Plaintiff may have been terminated not only in retaliation to her raising the issue of race (as discussed below) but also she may have been terminated because of her race.

Based upon this review, this Court finds Plaintiff has presented sufficient evidence to create a fact issue on the issue of pretext such that a reasonable jury might conclude that the school board's stated reason for discharging Plaintiff was a pretext for racial discrimination. Thus, the Court finds Defendants' Motion for Summary Judgment as to Plaintiff's race discrimination claim should be **DENIED.** *See Moyer v. DVA Renal Healthcare, Inc.,* 368 Fed. Appx. 714, 716 (8th Cir. 2010) (holding that a plaintiff may survive summary judgment in a Title VII racial discrimination case by

presenting direct evidence of discrimination or by creating an inference of discrimination under the *McDonnell Douglas* burden-shifting framework). *See also Lewis,* 591 F.3d at 1097 (stating "[m]orever, 'remarks of the employer that reflect a discriminatory attitude' are often sufficiently strong evidence to avoid the *McDonnell Douglas* framework completely") (citing *Roberts,* 528 F.3d at 1128).

        B.      **Retaliation**

To establish a *prima facie* case for retaliatory discharge under 42 U.S.C. § 1983, a plaintiff must show: (1) participation in a protected activity; (2) subjected to an adverse employment action; and (3) causal relationship between the participation in the protected activity and the subsequent adverse employment action. *See Hogan v. City of El Dorado,* 455 F. Supp. 2d 876, 883 (W.D. Ark. 2006) (applying the same standard to Title VII and 42 U.S.C. § 1983 actions). "Protected activities" include "activities ranging from filing a complaint to expressing a belief that the employer has engaged in discriminatory practices." *See Buettner v. Arch Coal Sales Co., Inc.,* 216 F.3d 707, 714 (8th Cir. 2000). A plaintiff need not establish the conduct which he or she opposed was in fact discriminatory but rather must demonstrate a good faith, reasonable belief that the underlying challenged conduct violated the law. *See id.*

As with a race discrimination claim, the same *McDonnell Douglas* burden-shifting analysis applies to a retaliation claim. Once the plaintiff establishes a *prima facie* case of retaliation, the burden shifts to the employer to produce some legitimate, non-discriminatory reason for the adverse action. *See Buettner,* 216 F.3d at 714. If the employer satisfies this burden, the plaintiff must prove the proffered reason is a pretext for retaliation. *See id.*

### 1.     **Evidence of a Protected Activity**

First, this Court finds there is a fact issue as to whether Plaintiff engaged in protected activity. Plaintiff argued through her attorney at the due process hearing on April 6, 2009 that she was being recommended for termination for a discriminatory reason. Plaintiff's attorney argued the following:

> And, I have to remark that in the face of this allegation that was prompted based originally on Donna Johnson's decision that this was Andrea Johnson's handwriting. In the face of that, the only person who has been negatively impacted by serious breaches of security that occurred throughout this episode is Ms. Johnson. And, I have alluded to it and I will say it flat out, this looks like a racial stereotyping that has occurred where the very reason, the best intentions are attributed to the white teachers and the worst intentions are attributed to the black teacher, and only the black teacher is facing repercussions from these breaches of security.

ECF No. 45-3 at 263-264. Thus, Plaintiff, through her attorney, raised the issue that the school district may be engaged in discriminatory conduct.

This Court also finds Plaintiff has raised a fact issue as to whether she had a good faith reasonable belief of discrimination. As noted above, there is sufficient evidence to raise a genuine issue of material fact that Plaintiff was treated differently at the time she was suspended on December 19, 2008. Further, based upon the findings at the hearing outlined above, there is a fact issue as to whether that belief was objectively reasonable. Importantly, Plaintiff was the only individual investigated for a security breach, and there were three other teachers who had access to the test, all of whom were Caucasian.

Defendants argue that *Plaintiff's attorney* raised this argument regarding discrimination at the due process hearing and not *Plaintiff herself* and, therefore, *Plaintiff* did not engage in protected activity. ECF No. 45 at 19. Defendants' rationale is that an attorney's statements are not considered "evidence" in a lawsuit but are considered argument. *Id.*. Defendants argued at the hearing in this

17

matter that this rule is "black letter law." ECF No. 60. This Court does not dispute Defendants' statement of the law that in general, arguments of counsel are not evidence in a case. *See Wittenburg v. American Exp. Financial Advisors, Inc.,* 464 F.3d 831, 838 (8th Cir. 2006) (holding that "arguments of counsel are not evidence").

This Court does, however, find that certain actions taken by an attorney while representing a client when done on behalf of a client can be protected activities. *See Sutherland v. Missouri Dept. Of Corrections,* 580 F.3d 748, 752 (8th Cir. 2009) (holding that the filing of an incident report, grievances, charges of discrimination, and a lawsuit are protected activities under Title VII). In *Sutherland,* the Eighth Circuit held that the filing of the lawsuit was a "protected activity." *See id.* This was true even though the plaintiff in that case was represented by an attorney who filed that lawsuit on her behalf. *See Sutherland v. Missouri Dept. Of Corrections,* 6:07-cv-03079 (W.D. Missouri March 9, 2007) (J. Maughmer). If the activities performed by the clients themselves and their attorneys were distinguished, this Court would reach the absurd result that *pro se* parties had engaged in a protected activity by filing a lawsuit while represented clients had not. Thus, this Court finds there is a fact issue as to whether Plaintiff engaged in a protected activity by raising the claim of discrimination at the due process hearing.

The second element Plaintiff must establish for a *prima facie* case of retaliation is that she suffered from an adverse employment decision. On April 9, 2009, after the due process hearing, Plaintiff was terminated. ECF No. 45-3 at 271-272. Thus, there is no dispute there was an adverse employment decision.

    **2.**     **Evidence of a Causal Relationship**

Third and finally, Plaintiff must establish a "causal relationship" between the protected

activity and the adverse employment action. Plaintiff's attorney made those statements regarding race discrimination at the due process hearing on April 9, 2009 and, later that night or early the next morning, the school board recommended she be terminated. *Id.* Therefore, when the facts are viewed in the light most favorable to the Plaintiff in this case, there is a fact issue as to whether there was a causal relationship between the protected activity and the termination.

### 3. Evidence of Pretext

Since Plaintiff has provided evidence creating a fact issue on each element of her *prima facie* burden, Defendants then have the burden to provide a legitimate, nondiscriminatory reason for terminating Plaintiff. As noted above, Defendants' reason is that Plaintiff provided answers to the algebra test to some of her students. Plaintiff then has the burden to establish this proffered reason is a pretext for retaliation. Also as noted above, and will not be repeated here, Plaintiff has provided evidence creating a genuine issue of material fact on the issue of pretext with both (1) the nature of the evidence presented at the due process hearing and (2) the statements made by a school board member who voted for termination of the Plaintiff. Thus, this Court finds Plaintiff has produced sufficient evidence to establish a genuine issue of material fact as to her retaliation claim and that summary judgment should be **DENIED** as to Plaintiff's retaliation claim.

### 4. Conclusion

Based upon the foregoing, this Court recommends that Defendants' Motion for Summary Judgment be **DENIED** as to Plaintiff's claims of race discrimination and retaliation. To the extent Plaintiff still alleges her procedural due process rights were violated, this Court recommends summary judgment be **GRANTED.**

**The parties have fourteen (14) days from receipt of this Report and Recommendation**

in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger *de novo* review by the district court.  *See Thompson v. Nix*, 897 F.2d 356, 357 (8th Cir. 1990).

       ENTERED this 9th day of November, 2010.

                                      /s/   Barry A. Bryant
                                      HON. BARRY A. BRYANT
                                      U.S. MAGISTRATE JUDGE