IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION


ANDREA JOHNSON                                                    PLAINTIFF


VS.                                    CASE NO. 4:09-CV-4012


TEXARKANA ARKANSAS
SCHOOL DISTRICT NO. 7, et al.                                   DEFENDANTS


## ORDER

Before the Court are Defendants' Motion for Judgment as a Matter of Law and Motion to Alter

or Amend the Judgment. (ECF No. 100).  Plaintiff has responded in opposition, (ECF No. 102), and

Defendants have filed a reply (ECF No. 104). The Court finds this matter ripe for consideration.

## BACKGROUND

Plaintiff Andrea Johnson was employed by the Texarkana Arkansas School District as a teacher

for the 2008-2009 school year.  On December 19, 2008, Plaintiff was suspended with pay for allegedly

helping three students cheat on a test by providing a test answer sheet.   After an investigation was

completed, Plaintiff was allowed a termination hearing before the school board.  In a four to three

vote, the school board adopted the recommendation of Superintendent Russell Sapaugh and terminated

Plaintiff.  Plaintiff subsequently brought claims against the Texarkana Arkansas School District No.

7, each individual school board member in their official capacities, and Superintendent Russell

Sapaugh in his individual capacity.  Plaintiff asserted a claim of race discrimination under 42 U.S.C.

§ 1983 and Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. § 2000e-2(a)(1).  Plaintiff

also asserted a claim of retaliation for opposing racial discrimination under 42 U.S.C. § 1983 and Ark.

Code Ann. § 16-123-108(a) of the Arkansas Civil Rights Act.

On September 29, 2011, a jury returned a verdict for Plaintiff on her race discrimination and retaliation claims against Defendants. (ECF No. 92). The race discrimination claim resulted in a mixed-motive verdict. While the jury found that Plaintiff's race played a part in Defendants' decision to terminate her, they also found that it had been proven that Defendants would have discharged Plaintiff regardless of her race. Therefore, no damages were awarded for the race discrimination claim. The jury awarded Plaintiff $500,000 in compensatory damages for her retaliation claim.

Defendants timely filed these post-trial Motions for Judgment as a Matter of Law and to Alter or Amend the Judgment, and maintain that they are entitled to judgment as a matter of law on each of Plaintiff's claims. In the alternative, Defendants argue that the mixed-motive verdict as to the race discrimination claim and the Arkansas Civil Rights Act damages cap applicable to the retaliation claim require the Court to alter the damages award reflected in the Judgment.

<u>STANDARD OF REVIEW</u>

Federal Rule of Civil Procedure 50(b) allows a party to renew a motion for judgment as a matter of law if "for any reason, the court does not grant a motion for judgment as a matter of law at the close of all evidence ... ." Judgment as a matter of law is "only appropriate when no reasonable jury could have found for the nonmoving party." *Southern Wine and Spirits of Nevada v. Mountain Valley Spring Co., LLC*, 646 F.3d 526, 533 (8th Cir. 2011); *see also Mattis v. Carlon Elec. Prods*., 295 F.3d 856, 860 (8th Cir.2002). The Court may only grant a motion for judgment as a matter of law when "all of the evidence points one way" and there is no possibility that the evidence supports the position of the non-moving party. *Howard v. Missouri Bone and Joint Center, Inc*., 615 F.3d 991, 995

2

(8th Cir. 2010).  In deciding whether to grant the motion, the Court "may not weigh the credibility of evidence, and conflicts in the evidence must be resolved in favor of the verdict."  *Southern Wine and Spirits*, 646 F.3d  at 533.

DISCUSSION

### *Plaintiff's Retaliation Claim*

Plaintiff's retaliation claim was brought pursuant to § 1983 and the Arkansas Civil Rights Act and alleges that the school district had an unconstitutional policy of retaliation for opposing racial discrimination.  Plaintiff put forth evidence at trial showing that she was retaliated against because her attorney raised issues of race discrimination at her termination hearing.  Defendants' motion for judgment as a matter of law rests on their belief that the actions of school-board director Adger Smith, from which the Plaintiff's retaliation claims originate,[1] cannot be imputed to Defendants. If Adger Smith's race-related comments or retaliatory motivations for voting in favor of Plaintiff's termination cannot be imputed to Defendants, then Plaintiff's retaliation claim must fail as a matter of law.

Defendants rightly point out that respondeat superior liability does not support a § 1983 claim or an Arkansas Civil Rights Act claim.  *Smith v. Insley's, Inc.*, 499 F.3d 875, 880 (8th Cir. 2007); *Jones v. Huckabee*, 250 S.W.3d 241 (Ark. 2007).  However, Plaintiff argues that Smith's actions are imputed to Defendants under *Monell* policymaker liability rather than respondeat superior liability. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 98 S. Ct. 2018  (1978).

A municipality may be held liable for the unconstitutional acts of its officials or employees when those acts implement or execute an unconstitutional municipal policy or custom.  *Id.* at 694.

---

[1] Testimony was given at trial alleging that Adger Smith told Plaintiff's attorney at the termination hearing that he objected to the attorney "playing the race card."  Other race-related comments by Smith were also testified to at trial.

3

Municipal liability "may arise from a single act of a policy maker," and that act "must come from one in an authoritative policy making position and represent the official policy of the municipality." *Springdale Educ. Ass'n v. Springdale School Dist.*, 133 F.3d 649, 652 (8th Cir. 1998). Whether a person is an authorized policymaker for *Monell*-liability purposes is a state-law question. *Id.* Under Arkansas law, it is "clear…that a school board…has ultimate responsibility for all district policies, including policies involving unfavorable employment action." *Id.* (citing Ark. Code Ann. § 6-17-205; § 6-17-1501 *et seq.*).

While Adger Smith had a single vote as a member of the school board, this fact alone does not shelter Defendants from the consequences of his comments or his motivating reasons for voting. Adger Smith was the deciding vote in the school board's 4-3 decision to terminate Plaintiff. He effectively caused the board to act by casting a vote that determined the board's decision regarding Plaintiff's employment. As an integral part of a policy-making body, Smith's actions and motivations as he exercises his voting authority simply cannot be dissected from the whole for purposes of avoiding liability. Accordingly, Smith was acting as an authorized policy-maker for Defendants, and his retaliatory motives can be imputed to Defendants.

Based upon testimony submitted at trial, the jury appears to have concluded that Adger Smith's vote was made in retaliation for Plaintiff's attorney "playing the race card" at her termination hearing. Therefore, it follows that retaliation motivated the school board's decision to fire Plaintiff. For these reasons, the Court will not disturb the jury's finding of retaliatory discharge in violation of 42 U.S.C. § 1983 and the Arkansas Civil Rights Act.

*Plaintiff's Race Discrimination Claim*

Plaintiffs submitted evidence at trial of race discrimination under two theories: disparate

4

treatment of similarly situated individuals and pretext. Defendants contend that Plaintiff failed to put forth evidence justifying an inference of discrimination under either of these theories, thereby rendering the jury's finding of race discrimination wholly unreasonable. The Court does not agree.

The Court finds that there was sufficient evidence submitted for a jury to conclude that Defendants' stated reasons for discharging Plaintiff were pretext for racial discrimination. The Court refrains from reciting all of the evidence offered in this case, but does find that a review of some testimony is warranted. Testimony was given at trial indicating that Plaintiff had been an exemplary employee prior to allegations that she assisted three students with cheating on an exam. Plaintiff testified that she denied making an answer sheet for the students when accused of doing so by school officials. Evidence was also submitted that showed that the offending students denied receiving the answer sheet from Plaintiff. Plaintiff offered evidence that another person could have gained access to the test because it was left unsecured in the room of a fellow teacher for a certain period of time. Plaintiff thus raised evidence that another person could have been at fault for helping the students to cheat.

Plaintiff also provided evidence that the questionnaires completed by the students stating that Plaintiff helped the students cheat were of questionable reliability. To illustrate a lack of motive for providing an answer sheet, Plaintiff submitted evidence that the students with answer sheets did not do particularly well on the exam. This fact could call into question what motive, if any, Plaintiff could have had for providing the answer sheets to the students if the answer sheets did not actually provide much help to the students.

Finally, Plaintiff produced evidence of Adger Smith's comments at the school-board meeting where Plaintiff was fired. The jury could have found those comments to show a racially discriminatory

motive by Adger Smith in making a determinative vote to fire Plaintiff. As explained in the Court's analysis of Plaintiff's retaliation claim, Smith was acting as an authorized policy-maker for Defendants and his racially discriminatory motives can be imputed to Defendants.

Given all of the evidence mentioned above, the Court is not persuaded that a reasonable jury could not have found for Plaintiff on her race discrimination claim under a theory of pretext. The jury could have concluded that there was enough evidence pointing to Plaintiff's innocence to find that her termination, when viewed in the light of Adger Smith's comments and actions, infers an improper, racially discriminatory motive.

The Court also finds that a reasonable jury could have found that the evidence supports an inference of discrimination based upon a disparate treatment theory. Plaintiff submitted sufficient evidence showing that she was subjected to harsh investigation, which ultimately led to her termination, while her similarly situated white co-workers were not. Evidence at trial showed that Plaintiff was the only individual investigated for providing the answer sheet. Plaintiff testified that upon being questioned about the answer sheet, she denied that she had created it. Furthermore, the test was allegedly left unsecured in another teacher's office, providing the opportunity for another teacher or student to access it. Plaintiff called into question why school officials did not question the teacher who allegedly discovered the answer sheet in one of the student's test packets. Plaintiff alleged that this teacher who "made the discovery" might have attempted to falsely accuse another party by bringing the answer sheet to the attention of school officials. Plaintiff also submitted evidence that school officials investigated her alone even though they had no information at the time to suggest that she was the only teacher with the ability to access the students during the test to give them the answer sheet.

Based upon the evidence above, the Court is not persuaded that a reasonable jury could not have found for Plaintiff on her race discrimination claim under a theory of disparate treatment.  The jury could have concluded that there was enough evidence to show that white teachers had access to the test and to the students taking the test that day.  If other teachers had the opportunity to provide the answer sheet to the students, the jury could have concluded that these other teachers should have been investigated.  Based upon the totality of the evidence, the jury could have inferred that these similarly situated white teachers were not investigated for racially discriminatory reasons.

For the reasons stated above, the Court will not disturb the jury's finding of race discrimination under 42 U.S.C. § 1983 and Title VII.  Defendants' Motion for Judgment as a Matter of Law is denied.

### *Alteration of Judgment*

In the alternative, Defendants ask the Court to alter the judgment pursuant to Federal Rule of Civil Procedure 59.  Defendants make this request for two reasons: (1) the jury's mixed-motive verdict on Plaintiff's race discrimination claim may require an alteration of the judgment to reflect declaratory or injunctive relief; and (2) the Arkansas Civil Rights Act damages cap should apply to Plaintiff's retaliation claim.

### 1. Race Discrimination/Mixed Motive Award

Defendants ask the Court to amend or alter the Judgment to reflect what, if any, declaratory and/or injunctive relief Plaintiff is entitled to under Title VII's direction on damages for mixed-motive verdicts.  42 U.S.C. §2000e-5(g)(2)(B).  Plaintiff has filed a Motion for Equitable Relief (ECF No. 95) requesting, in part, reinstatement, back pay, restoration of previous benefits, lost wages and injunctive relief for both her race discrimination and retaliation claims.  The Court will consider Defendants' position on these issues when it addresses Plaintiff's motion in a separate order.  Relief in the form

7

of attorneys fees and costs related to race discrimination claim will be addressed in Plaintiff's Motion for Attorneys Fees and Costs.  (ECF Nos. 98 and 105).

Plaintiff, in her response to Defendants' motion for alteration, seems to suggest that they jury's award of damages applies to both the mixed-motive race discrimination verdict and the retaliation verdict.  This reading is not feasible. The verdict form clearly indicated to the jury that, if they found that "Defendant would have discharged Plaintiff regardless of her race," then compensatory damages as to the race discrimination claim were not permissible. 42 U.S.C. §2000e-5(g)(2)(B)(ii).  Therefore, the only possible conclusion is that the $500,000 compensatory damages award relates only to the jury's verdict in favor of Plaintiff on her retaliation claim.

2.  Retaliation Award

Defendants argue that the damages cap in the Arkansas Civil Rights Act, Ark. Code Ann. §16-123-107(c)(2)(A), should cap the Plaintiff's award at $300,000 on her retaliation claim damages, because that claim was made under both the Arkansas act and 42 U.S.C. § 1983.  Various courts have held that where a claim is made under similar state and federal statutes, one capped and one not, and submitted to the jury under a single theory, the court should apportion damages to give the plaintiff the entire jury award.  *Martini v. Fed. Nat'l Mortg. Ass'n*, 178 F.3d 1336, 1349 (D.C. Cir. 1999). *Gagliardo v. Connaught Labs., Inc.*, 311 F.3d 565, 571 (3rd Cir. 2002).[2]

Because the retaliation claim was submitted to the jury under a single instruction and theory, the Court will not apply the Arkansas damages cap to override the uncapped § 1983 claim.  Any award beyond the Arkansas damages cap is simply allocated to the § 1983 retaliation claim.  Therefore, the

---

[2]  Although the two statutes in those cases present a federal-law damages cap and a state-law uncapped statute (the opposite of the statutes here), the policy in those cases—furthering the jury's intent—applies in this case.

Court declines to alter the Judgement as it relates to the retaliation claim.

<u>CONCLUSION</u>

For the reasons discussed above, Defendants' Motion for Judgment as a Matter of Law and Motion to Alter or Amend Judgment are **DENIED**.[3]  At trial, Superintendent Russell Sapaugh was dismissed as a matter of law as a defendant in his individual capacity.  (ECF No. 90, Minute Entry - Rule 50 conference in chambers).  Therefore, the clerk is directed to terminate Sapaugh as a Defendant.

IT IS SO ORDERED, this 16th day of February, 2012.


<u>/s/ Harry F. Barnes</u>
Harry F. Barnes
United States District Judge

---

[3]  The Court notes that the Clerk's Judgment entered on September 29, 2011 (ECF No. 93) does not represent a final judgment in this case.  Plaintiff's Motion to For Equitable Relief (ECF No. 95) seeks an alteration of the Clerk's Judgment to reflect an award of equitable and injunctive relief.  This motion must be ruled upon by the Court before an appealable final judgment is issued.